O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MARCO ANTONIO GARCIA, et al., | Case No.: SACV 09-01169 DOC(RNBx) |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, RAYMOND ESCOBAR aka RAY ESCOBAR and DOES 1 and 100 inclusive, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO FOR SUMMARY JUDGMENT |
| Defendants. | |

Before the Court is Motion for Summary Judgment ("Motion") filed by Defendant ICE Special Agent Raymond Escobar ("Defendant" or "Defendant Escobar"). (Dkt. 227). For the following reasons, the Court DENIES the Motion with respect to the Fourth Amendment claim asserted by Plaintiff Marco Antonio Garcia ("MAG"). The Court GRANTS the Motion with respect to the other Plaintiffs who are not MAG.

I.      Background

On March 24, 2011, a Third Amended Complaint ("TAC") was filed by Plaintiff Marco Antonio Garcia ("MAG") and other plaintiffs ("Other Plaintiffs") who were present during MAG's arrest and the search of their residence conducted by federal officers on December 6, 2007.  (Dkt. 149).  The gravamen of the Complaint is that Defendant ICE Special Agent Raymond Escobar ("Defendant") provided information to a prosecutor that contained misrepresentations and omissions regarding whether MAG had been identified as the driver of a Jeep in a money-laundering investigation.  Based on Defendant's information, the prosecutor obtained a warrant, grand jury indictment, and arrest of MAG at his residence and then held him for 50 days—all without probable cause that MAG was indeed the driver who had been surveilled.  The Other Plaintiffs' claims arise from their treatment during MAG's arrest and the warrantless search of the residence on December 6, 2007.

Because the Court is determining Defendant's motion for summary judgment, the Court relates the facts in the light most favorable to the nonmoving parties, that is, MAG and the Other Plaintiffs.  *See Beck v. City of Upland*, 527 F.3d 853, 857 (9th Cir. 2008).

### a.  Investigation and Surveillance on May 14 and 17, 2007

This case arises from the May 2007 surveillance conducted primarily by two federal agencies and some non-federal agencies as part of an investigation of a money-laundering operation.  In May 2007, the Houston office of the United States Immigration and Customs Enforcement ("ICE") learned through wiretaps that the subject of a money-laundering investigation was traveling to Southern California for a May 14, 2007, meeting with an English-speaking male Hispanic who identified himself as "Seca" or "Soca."  ICE Houston contacted ICE Los Angeles and arranged for ICE Special Agent John Reed to coordinate surveillance with other ICE agents and with the Inland Regional Narcotics Enforcement Team ("IRNET"), a division of the San Bernardino County Sheriff.

On May 14, 2007, IRNET officer Victor Moreno ("Moreno") observed the money-laundering target exchange bags with the driver of a silver 2002 Jeep with license plate number 4UVX229.  Four days later, on May 18, the United States Drug Enforcement Administration

("DEA") observed the same Jeep in a parallel money-laundering investigation being conducted by the DEA.

On May 18, 2007, the DEA phoned Defendant Escobar to learn the identity of the driver. Defendant emailed the DEA a DMV photograph of Plaintiff Marco Antonio Garcia ("MAG") and stated that the "LA Group and IRNET ID'd this guy as the driver." *See* Sealed Pl. Evid., Ex. 1 at 4. Defendant also told the DEA that the car was registered to a different person, "LOPEZ-PALMINOS," but that "the utilities for the address are in [MAG's] name." *Id.*

Marco Antonio Garcia ("MAG") would later be indicted and arrested as the driver of the silver Jeep and the "Seca/Soca" heard on the wiretaps.

### b. Information Provided by Defendant to the Prosecutor Regarding MAG's Identification

Defendant Escobar gave Prosecutor Luege an **August 22, 2007 Prosecution Report** ("**August PR**") that describes the May 14, 2007, transaction as involving "GARCIA" driving a "silver Jeep" with California license plate 4UVX229. The report states that the transaction was observed by both ICE Los Angeles and IRNET agents. Defendant indicates that IRNET agent Moreno identified the suspect as "GARCIA," shown by the name "Detective Moreno" next to the description of the transaction. *See* Opp'n 3; Sealed Pl. Evid., Ex. 21 at US-1351-52.

Defendant's August PR was Prosecutor Luege's source of information regarding the identification of MAG. Although Prosecutor Luege also relied on a prosecution report filed by the DEA, *that* DEA report identifies MAG *only by citing Defendant's August PR. See* Sealed Pl. Evid., Ex. 19 at US-1330. Specifically, under the heading "Marco Antonio GARCIA Aka SECA/SOCA" in the DEA's prosecution report the following phrase appears: "Identity: ICE Prosecution Report page 12 (Exhibit 258)." This is a reference to Defendant's August PR.[1]

### c. MAG's Indictment and Arrest and the Search of the Home

---

[1] Because the DEA report relies exclusively on *Defendant's* August PR to identify MAG, the Court is not persuaded by Defendant's argument that Prosecutor Luege relied on the *DEA report* to indict MAG.

On December 5, 2007, a grand jury indicted "Marco Antonio Garcia aka Seca/Soca" for conspiracy to conduct and attempt to conduct unlawful financial transactions affecting interstate commerce.  On the same day, a court issued a warrant for MAG's arrest.  On December 6, 2007, at the DEA's request, several ICE agents including Defendant executed the warrant to arrest MAG and did so at MAG's home.

Defendant was designated the "team leader" for MAG's arrest.  Prior to executing the arrest, Defendant's supervisor discussed with the team a plan to obtain consent from the residents to search the home.  No search warrant was issued for MAG's home.

On December 6, 2007, federal agents burst into the home of MAG and the Other Plaintiffs.  Defendant arrested and handcuffed MAG and transported MAG to the Santa Ana Jail in the City of Santa Ana, where he was imprisoned for fifty days until January 25, 2008, after which he was released on bond.  During the arrest, ICE agents—but not Defendant—searched the home and detained the Other Plaintiffs during the search.  The Other Plaintiffs claim to have suffered physical and emotional injuries during the search.  After the search, these agents obtained written consent to search from the Other Plaintiffs.  One of the Other Plaintiffs signed her written consent form only after an ICE agent—not Defendant—threatened that her children would be taken away.

### d.  MAG's  Subsequent Release

On April 28, 2008, Prosecutor Luege unilaterally moved to dismiss the charges against MAG without prejudice.  The only explanation provided was that "[t]he [DEA] has determined that, at this time, there is insufficient evidence to prove, beyond a reasonable doubt, [MAG's] involvement in the conspiracy charged in count two of the indictment." *See United States v. Le, et al.,* No. 8:07-cr-00278-CJC-9 (C.D. Cal.), at Docket 1.

### e.  Information Known to Defendant Regarding MAG's Identification, But Not Provided to the Prosecutor

MAG has identified the following documents which were known to Defendant Escobar before the indictment but which Defendant did not provide to Prosecutor Luege:

(1) Defendant's **May 2007 report** ("May Escobar ROI"), which has the stated purpose of "document[ing] a . . . criminal associate identified as Marco Antonio Garcia." The report states that, on May 18, 2007, "[b]ased on a DMV photograph" provided by Defendant, "DEA Orange County surveillance team members positively identified the [unknown male driving a silver jeep] as GARCIA." It also states that, on May 14, 2007, the suspect was "identified as Marco Antonio GARCIA by a California . . . (DMV) photograph during surveillance by SAC/LA and . . . (IRNET) officers." *See* Sealed Pl. Index. Evid., Ex. 6 at US-68-69.

(2) The **IRNET Report** ("May IRNET Report") of surveillance on May 14, 2007, contains a description of the transaction involving the driver of the silver Jeep with California license plate 4UVX229, but does not identify the driver or mention "GARCIA" or "Marco Antonio Garcia." Moreno is the Detective identified as the "Case Agent" in the report. *See* Opp'n 7-8; Sealed Pl. Evid., Ex. 22 at US-449-50.

(3) The **DEA Report** ("May DEA Report") of surveillance on May 18, 2007, states that an "unidentified male" with a "mustache, and possibly a goatee . . . was later identified as *possibly* being GARCIA, Marco Antonio." The report does not state who identified the suspect. *See* Sealed Pl. Evid., Ex. 2 at US-30 (emphasis added).

In addition, MAG has identified the following visual evidence which was known[2] to Defendant but which Defendant did not provide to Prosecutor Luege:

(1) **MAG's California driver's license**

(2) **Surveillance photos** taken by Pomona PD at the end of June 2007 of the suspect observed driving the Jeep

(3) **Surveillance photos** taken by LA IMPACT of the suspect observed driving the Jeep

> **f.   MAG's Identification Prior to Prosecution, as Recalled by Defendant and Other Agents**

---

[2] Defendant denies knowledge only of the photos taken by LA IMPACT. Defendant's assertion is analyzed later in this Order.

None of the agents who surveilled the driver of the silver Jeep have stated that they identified the suspect as MAG.  Defendant Escobar testified that he does not recall who identified MAG.  Escobar Dep. 109:15-25; 110:1-10.  ICE agent Reed, who organized the May 14, 2007, surveillance and whose report parroted the language in Defendant's August PR, also can not recall who identified MAG.  Sealed Pl. Evid., Ex. 7 84:11-15.[3]  IRNET agent Moreno does not assert that he identified MAG.  Although Moreno does recall seeing a photo of someone, he did not recognize MAG's DMV photo in his deposition.  *See* Opp'n 7; Sealed Pl. Evid., Ex. 10 at 19:1 and 22:11).

### g.  Operative Complaint and Subsequent Orders by this Court

In the TAC, MAG and the Other Plaintiffs allege a *Bivens* action against Defendant Special Agent Raymond Escobar.  In addition, they alleged five claims against Defendant United States of America ("USA") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80.  MAG alleges solely on his own behalf the following claims against the USA: (1) false arrest and imprisonment; (2) malicious prosecution; and (3) assault and battery.  *Id.*  The Other Plaintiffs allege solely on their own behalf: (1) false imprisonment; and (2) assault and battery.

On September 19, 2011, this Court granted in part the USA's summary judgment motion but denied the motion as to: (1) MAG's false imprisonment claim to the extent it arose from his arrest and detention; (2) all assault claims; and (3) the battery claims of MAG and two Other Plaintiffs.  Order (Dkt. 226) 9, 21.  The USA moved for reconsideration of the Court's decision regarding MAG's false imprisonment claim.  (Dkt. 243).  On November 3, 2011, the Court denied the USA's motion.  (Dkt. 256).

On September 22, 2011, Defendant Escobar filed the instant Motion for Summary Judgment.  (Dkt. 227).

### II.   Legal Standard

---

[3] The report by ICE Agent Reed states that "IRNET investigators positively identified  the driver of the [Jeep] as Marco Antonio GARCIA via a California DMV photo."  *See* Sealed Pl. Evid., Ex. 5 at US-65-66.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III.   Discussion

For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment with respect to all claims asserted against Defendant by the Other Plaintiffs who are not MAG. The Court DENIES Defendants' Motion for Summary Judgment with respect to the Fourth Amendment claim asserted by MAG.

### a.   MAG and the Other Plaintiffs' Allege Claims Only Under the Fourth Amendment

The Court first concludes that MAG and the Other Plaintiffs' claims against Defendant Escobar are based solely on alleged violations of the Fourth Amendment of the federal Constitution.  Although the Complaint and Plaintiffs' Opposition is somewhat unclear, the Court concludes that Plaintiffs advance two theories, namely that: (1) MAG's claim arises from his arrest and prosecution without probable cause and which was proximately caused by Defendant's misrepresentations and omissions to Prosecutor Luege; and (2) the Other Plaintiffs' claims are based on a warrantless search of the residence.  The Court reaches this conclusion because Plaintiffs' TAC and Opposition state that their claims are "brought under *Bivens*," the Opposition refers exclusively to "Fourth Amendment" violations, and Plaintiffs do not object to Defendant's characterization of their legal theories as being brought under the Fourth Amendment.[4]  *See* TAC (Dkt. 149) 30:21 (Fifth Count, which is the only claim expressly brought against S/A Escobar, is "brought under *Bivens*"); Opp'n. (Dkt. 230) 18.

The Court disagrees with Defendant's characterization of MAG's legal theory as being one for malicious prosecution in violation of the federal Constitution.[5]  Such a characterization is beneficial to Defendant because it imposes additional requirements on Plaintiff to show not only

---

[4] *Bivens* is the Supreme Court case that recognized a civil cause of action for federal officials' violations of the federal Constitution.  *See Ting v. United States*, 927 F.2d 1504, 1509 n.1 (9th Cir. 1991); *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395 (1971).  A *Bivens* action is the "federal analog" to suits "brought against state officials under . . . 42 U.S.C. § 1983."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (U.S. 2009); *Sommer v. United States*, 2010 U.S. Dist. LEXIS 94292, *8-9, *27-30 (S.D. Cal. Sept. 10, 2010) ("Section § 1983 actions are analogous to Bivens actions in that both actions seek redress for constitutional violations by government officials acting under color of law.").  Thus, throughout this Order, the Court relies on Fourth Amendment violations alleged pursuant to Section 1983.

[5] A malicious prosecution may violate the First, Fourth, Thirteenth, and Fourteenth Amendments.  *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070 (9th Cir. 2004) (decided under Section 1983 claim).

that he was arrested without probable cause in violation of the Fourth Amendment, but also that Defendant "prosecuted [Plaintiff] with malice" and "did so for the purpose of denying [Plaintiff] equal protection or another specific constitutional right." *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (decided under Section 1983). However, the Court agrees with Defendant that, to the extent MAG alleges malicious prosecution in violation of the federal Constitution, MAG's reliance on cases defining "malice" under California law are inadequate to establish that claim. *See* Opp'n 19 (citing *Liable v. Superior Court*, 157 Cal. App. 3d 44 (1984); *Ting v. United States*, 927 F.2d 1504, 1514 (9th Cir. 1991)).

### b. Defendant Fails to Show that No Genuine Issue of Material Fact Exists Regarding Defendant's Misrepresentations and Omissions Constituted a Violation of MAG's Fourth Amendment Rights

Where, as here, a plaintiff seeks to hold non-prosecutorial officials liable under the Fourth Amendment for his arrest or prosecution and the arrest occurred *after* a prosecutor had sought and obtained a warrant, the plaintiff must show that: (1) there was no probable cause for his arrest; and (2) the non-prosecutorial officials' acts proximately caused the plaintiff's injury.[6] *See Beck v. City of Upland*, 527 F.3d 853, 860, 862, 865, 870 (9th Cir. 2008).

#### i. Lack of Probable Cause

Probable cause to arrest requires that the facts and circumstances within Defendant's knowledge were sufficient to warrant a prudent person to believe that: (1) an offense had been

---

[6] The Ninth Circuit has confusingly referred to this cause of action under the Fourth Amendment as both "false arrest" and "malicious prosecution, " but also stated that the "distinction makes no analytical difference." *See Beck v. City of Upland*, 527 F.3d at 861 n.7 (listing cases). However, the elements of the *California* torts of false arrest and malicious prosecution differ from each other as well as from this cause of action and these differences formed a basis for this Court's prior order. *See* Order (Dkt. 226) (denying summary judgment on false arrest claim brought under Federal Tort Claims Act but granting on malicious prosecution). Thus, to avoid confusion in this Order, the Court does not use either of these terms.

committed; and (2) the arrestee committed the offense.  *See Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010).  Here, Plaintiffs dispute only the second prong, namely, that the facts known to Defendant were sufficient for a prudent person to have believed that MAG committed the offense for which he was arrested.

To determine whether a warrant is supported by probable cause, a court excludes any *misrepresentations* contained in the materials used to obtain the warrant, adds any information which was improperly *omitted* and known to the defendant, and then determines whether the remaining information is sufficient to create probable cause.[7]  *See Crowe v. County of San Diego*, 608 F.3d 406, 435 (9th Cir. 2010) (analyzing whether warrant was supported for probable cause); *see also Smith v. Almada*, 640 F.3d 931, 937-38 (9th Cir. 2011).

### 1.  Misstatements by Defendant

Where a defendant presented evidence to the prosecutor that *conflicted* with other evidence known to the defendant at the time, it is appropriate for a jury to determine whether the defendant's evidence was a misrepresentation that negated probable cause.  *See, e.g.*, *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991) (reversing summary judgment for defendants on plaintiff's Section 1983 claim alleging Fourth Amendment violations because prosecutor relied on defendant's police report, which conflicted with other police and non-police witnesses' accounts); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988) (upholding jury verdict

---

[7] Defendant argues that the grand jury indictment of Plaintiff is *per se* evidence of probable cause.  *See* Mot 14.  The Ninth Circuit has rejected this "specious reasoning" that the filing of a grand jury indictment immunizes a defendant from liability under the Fourth Amendment simply because the defendant's "lie is so successful that on the basis of the lies a grand jury finds probable cause."  *Harris v. Roderick*, 126 F.3d 1189, 1198, 1205 (9th Cir. 1997) (affirming that plaintiff's *Bivens* action stated a claim under the Fourth Amendment because defendants were not entitled to immunity where defendants allegedly filed false official reports and testified falsely before the grand jury and these actions led to plaintiff's shooting, arrest, and trial).

for plaintiffs' Section 1983 claim under the Fourth Amendment because prosecutor's filing of charges against plaintiffs did not insulate defendants from liability where charges were based on defendants' police report and there were conflicting police officers' accounts of the incident).

Plaintiff has identified the following conflicting evidence regarding *who* identified MAG, specifically, whether.

(1) **IRNET identified MAG**: Defendant Escobar gave Prosecutor Luege an **August 22, 2007 Prosecution Report** ("August PR") that describes a May 14, 2007, transaction involving "GARCIA" driving a "silver Jeep" with California license plate 4UVX229 that is observed by both ICE Los Angeles and IRNET agents.  Defendant indicates that IRNET agent Moreno identified the suspect as "GARCIA," shown by the name "Detective Moreno" next to the description of the transaction.  *See* Opp'n 3; Sealed Pl. Evid., Ex. 21 at US-1351-52.

(2) **IRNET did not identify MAG**: The **IRNET Report** ("May IRNET Report") of surveillance on May 14, 2007, contains the same description of the transaction as in *Defendant's* August PR, including car and license plate.  However, the IRNET report does *not* identify the driver or even mention a "GARCIA" or "Marco Antonio Garcia."  Moreno is the Detective identified as the "Case Agent" in the report.  *See* Opp'n 7-8; Sealed Pl. Evid., Ex. 22 at US-449-50.

(3) **DEA, ICE, or IRNET identified MAG**: Defendant created a **May 2007 report** ("May Escobar ROI") with the stated purpose of "document[ing] a . . . criminal associate identified as Marco Antonio Garcia."  The report states that, on May 18, 2007, "[b]ased on a DMV photograph" Defendant provided, "DEA Orange County surveillance team members positively identified the [unknown male driving a silver jeep] as GARCIA."  It also states that, on May 14, 2007, the suspect was "identified as Marco Antonio GARCIA by a California . . . (DMV) photograph during surveillance by SAC/LA and . . . (IRNET) officers."  *See* Sealed Pl. Index. Evid., Ex. 6 at US-68-69.

(4) **DEA did not identify MAG**: The **DEA Report** ("May DEA Report") of surveillance **on May 18, 2007**, states only that an "unidentified male" with a "mustache, and possibly a goatee . . . was later identified as *possibly* being GARCIA, Marco Antonio." The report does not state who identified the suspect. *See* Sealed Pl. Evid., Ex. 2 at US-30 (emphasis added). The "later identified" language in the DEA report may be due to **Defendant's May 18, 2007, email** to the DEA, which included a DMV photograph of MAG and stated that the "LA Group and IRNET ID'd this guy as the driver." *See* Sealed Pl. Evid., Ex. 1 at 4. There is no record of a response by the DEA identifying the driver as MAG.

(5) **No One Identified MAG**: None of the agents who surveilled the silver Jeep have stated that they identified the suspect as MAG prior to the indictment. Defendant Escobar testified that he does not recall who identified MAG. Escobar Dep. 109:15-25; 110:1-10. Another ICE Agent, John Reed, whose report parroted the language in Defendant's August PR also can not recall who identified MAG. Sealed Pl. Evid., Ex. 7 84:11-15.[8] In his deposition, IRNET agent Moreno does not assert that he identified MAG. Although Moreno did recall seeing a photo of someone, he did not recognize MAG's DMV photo in the deposition. *See* Opp'n 7; Sealed Pl. Evid., Ex. 10 at 19:1 and 22:11).

In sum, Plaintiff has shown that Defendant gave Prosecutor Luege a report suggesting that IRNET agent Moreno identified MAG as the driver of a silver Jeep in a transaction on May 14, 2007. However, Defendant did not give Prosecutor Luege his earlier report, in which Defendant states that three different agencies identified MAG. The record does not reflect that any of these agencies—IRNET, DEA, or ICE—documented their respective agents' positive identification of

---

[8] The report by ICE Agent Reed states that "IRNET investigators positively identified the driver of the [Jeep] as Marco Antonio GARCIA via a California DMV photo." *See* Sealed Pl. Evid., Ex. 5 at US-65-66.

MAG.  Finally, neither IRNET agent Moreno nor any other agents who surveilled the suspect remember identifying the suspect as MAG.

Based on this conflicting evidence, the Court concludes that there is a genuine issue of fact as to whether MAG was positively identified by *anyone* prior to his indictment, and thus Defendant's August PR suggesting that Moreno could testify as to MAG's identification was a misrepresentation.

### 2.  Omissions

Construing all facts and reasonable inferences in favor of the Plaintiff, the following evidence was known to Defendant but omitted from the August PR he gave to Prosecutor Luege:

(4) **MAG's California driver's license**

(5) **Surveillance photos** taken by Pomona PD of the suspect alleged in Defendant's August PR to be MAG

(6) **Surveillance photos** taken by LA IMPACT of the suspect alleged in Defendant's August PR to be MAG

Defendant does not dispute that he omitted these items from his report or deny knowledge of the first two items.  Although Defendant does deny knowledge of the photos taken by LA IMPACT, his inadequate citation to the record requires this Court to construe his assertion as unsupported and therefore insufficient for purposes of a summary judgment.[9]

---

[9] In his Reply and at oral argument, Defendant cites "Exhibit A," without any page reference, to argue that he never received the LA IMPACT photos.  *See* Reply 3 n.1, Ex. A.  Exhibit A does not show anything of the sort; it is simply a list of the United States' supplemental disclosures. In addition, at oral argument, Defendant cited a page from his August PR; this page says nothing more than  "REQUESTED COPY FROM DEA ORANGE COUNTY."  Sealed Pl. Evid., Ex. 21 at US-1597-98 ("Exhibit 7").  Even assuming, as Defendant urges, that this page referred to the LA IMPACT photos, the reasonable inference drawn in the light most favorable to Plaintiffs is

Furthermore, even if Defendant lacked knowledge of the exculpating LA IMPACT photos, the genuine issue of fact as to whether Defendants misrepresented that MAG was positively identified would be enough to deny summary judgment.

### 3. Remaining Information

The Court concludes that, after excluding Defendant's potential misrepresentation that IRNET agent positively identified MAG and after including the omitted photographs, it is appropriate for a jury to determine whether the remaining evidence is insufficient to show probable cause.

Defendant argues that, even if the photos are included, three additional "facts" would have shown probable cause, namely: (1) Prosecutor Luege's deposition testimony that she would have found probable cause anyway due to "information that was on the wiretap investigation"; (2) one officers' deposition testimony that he saw MAG *after* his arrest and he looked like the person the officer surveilled; and (3) the surveilled Jeep's registration to MAG's address.  *See* Mot. 14-15; Luege Dep. 41:17-19.

First, Defendant's reliance on testimony procured for this case from Prosecutor Luege and another officer is unpersuasive.  Testimony procured during litigation to show that a declarant *subjectively believed* that probable cause previously existed does not satisfy the "objective" inquiry that probable cause requires.  *See Edgerly v. City & County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010).  Furthermore, Defendant's failure to offer as evidence the wiretap information that purportedly would have shown probable cause—relying instead on Prosecutor's Luege's vague, one-sentence characterization of the information—can hardly satisfy Defendant's burden on summary judgment.

Second, Defendant's evidence that the surveilled Jeep was registered to MAG's address does not establish probable cause that MAG—and not the car's owner—committed the offenses done by the driver of the Jeep.  Indeed, the same IRNET report that contains MAG's address

that Defendant's *request* for the photos *was honored*, and thus he did have knowledge of the photos.

also shows that the owner of the Jeep is *not* MAG but rather Vincent Lopez Paliminos.  *See*
Opp'n 7-8; Sealed Pl. Evid., Ex. 22 at US-449-50.[10]  Strangely, although Defendant knew that
MAG was not the car's owner, Defendant does not appear to have investigated the car's owner.

In sum, Defendant has not directed this Court to additional evidence showing that
probable cause existed to conclude that MAG was the same person as the surveilled driver of
the Jeep.  Thus, the Court considers the remaining evidence.  First, given the amount of
conflicting information regarding what agency, *if any*, identified MAG, the Court concludes it
must exclude as a potential misrepresentation Defendant's assertion to Prosecutor Luege that an
IRNET agent identified MAG.  Next, the Court considers whether the omitted photographs of
MAG and the surveilled driver of the Jeep would have been sufficient by themselves to
establish that MAG was the driver.  The Court concludes that these photographs would have
been insufficient to establish probable cause given that, as Defendant concedes, the facial
differences evident in these photographs prompted Prosecutor Luege to drop charges against
MAG based on insufficient evidence.  Finally, the fact that the surveilled Jeep was registered to
a person other than MAG further undermines a finding of probable cause.

Thus, the Court concludes that Defendants have not met their burden on summary
judgment to show that Plaintiffs have failed to establish the absence of probable cause for
MAG's arrest.

> **ii.  Defendant's acts and omissions overcome the presumption of a
> prosecutor's independent judgment and thus were the proximate
> cause of Plaintiff's injuries**

---

[10] While Defendant also omitted to tell Prosecutor Luege that the registered owner of the
surveilled Jeep was not MAG, Prosecutor Luege states that she was aware that MAG was not
the registered owner before she sought the indictment.  *See* Luege Dep. 42:22-25.  Thus, the
Court does not include Defendant's failure to inform Prosecutor Luege of this exculpatory
evidence as an "omission" for purposes of determining Defendant's liability.

In a summary judgment motion, there is an evidentiary presumption that a non-prosecutorial officials' acts are not the proximate caused of the arrestee's injury after the prosecutor has begun the prosecution.[11]  *See Beck v. City of Upland*, 527 F.3d 853, 860, 862, 865, 870 (9th Cir. 2008).  This presumption may be rebutted, however, if the plaintiff shows that the defendant's actions "caused" the prosecutor to bring charges.  *Smiddy v. Varney*, 665 F.2d 261, 266-267 (9th Cir. 1981).  Causation may be shown where the non-prosecutorial officer "made deliberately false statements or recklessly disregarded the truth" and these statements were "material" to the finding of probable cause.[12]  *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002); *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995).

## 1.  At minimum, there is a genuine issue of material fact as to whether Defendant recklessly disregarded the truth

Summary judgment is inappropriate—and thus a jury should be the one to determine if a defendant recklessly disregarded the truth—where, as here, there is: (1) conflicting evidence and thus the reasonable inference that the information the defendant provided to the prosecutor was a misrepresentation; and (2) the defendant omitted information which would have undermined probable cause.  *See Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991) (reversing summary judgment for defendants on Section 1983 claim alleging Fourth Amendment violations because arresting officers' police reports to prosecutor "omitted crucial information" and "police themselves offer[ed] contradictory accounts"); *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th

---

[11] The presumption of independent prosecutorial judgment in the charging decision is an "evidentiary presumption applicable at the summary judgment stage to direct the order of proof."  *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) *abrogated on other grounds as stated in Yadin Co. v. City of Peoria*, 2008 U.S. Dist. LEXIS 109501, at *13 (D. Ariz. Mar. 25, 2008)

[12] The Ninth Circuit has also recognized other examples of causation, such as when a defendant pressures a prosecutor "to act contrary to his independent judgment."  *Smiddy*, 665 F.2d at 266-267.

Cir. 1988) (upholding jury verdict for plaintiffs on Section 1983 claim under the Fourth

Amendment because prosecutor's filing of charges against plaintiffs did not insulate defendants

from liability where charges were based on defendants' police report); *Sommer v. United States*,

2010 U.S. Dist. LEXIS 94292, at *8-9, *27-30 (S.D. Cal. Sept. 10, 2010) (applying Section 1983

cases to plaintiff's *Bivens* action to hold that plaintiff stated a claim against defendant under the

Fourth Amendment because defendant's certification of cause of death as poison where only two

of six tests showed poison constituted at least reckless disregard for truth).

## 2.  Defendants' actions were material to a finding of probable cause

Defendant contends that, even if he recklessly disregarded the truth, his

misrepresentations and omissions were not material to probable cause.  *See* Mot. 11.  The only

case cited by Defendant, *Smith v. Almada*, is distinguishable because there probable cause *would*

*have existed* even if the defendant had not omitted evidence.  *See* 640 F.3d 931, 937-38 (9th Cir.

2011).  In *Smith*, the Ninth Circuit held that probable cause to arrest the plaintiff for arson

existed because the plaintiff admitted to a dispute with the alleged arson victim and firebombs

that caused the fire contained numerous pieces of mail addressed to the plaintiff at his residence.

*Id.*  (affirming summary judgment for defendant on Section 1983 claim alleging Fourth

Amendment violation).  In contrast, this Court has concluded that there is at least a genuine issue

of material fact as to whether probable cause would have existed absent Defendant's

misrepresentations and omissions.

Thus, this Court concludes that Defendant has not shown that Plaintiffs have failed to

overcome the evidentiary presumption that Defendant's acts and omissions were not the

proximate cause of MAG's arrest and prosecution. [13]

---

[13] Furthermore, the Court is not persuaded by Defendant's argument that he is immune because

he had a warrant to arrest MAG or because DEA or ICE officers in good faith relied on his

representations about MAG.  The Ninth Circuit has rejected the argument that defendants are

immune "because the arresting officers acted in good faith."  *Harris v. Roderick*, 126 F.3d 1189,

### 3. This Court's prior grant of summary judgment on MAG's FTCA claim against the USA does not prevent denial of summary judgment here on MAG's Fourth Amendment claim

Generally, the United States, as sovereign, is immune from suit unless it waives immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act ("FTCA") waives this immunity and "imposes liability on the United States government for acts by its employees that constitute torts in the state where the conduct occurred." *Ting v. United States*, 927 F.2d 1504, 1513 (9th Cir. 1991); 28 U.S.C. § 2674. The "discretionary function exception" to the waiver precludes liability under the FTCA, however, where the claim is based upon a federal employee's failure to "perform a *discretionary function* . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added).

In a previous Order, this Court partially granted the summary judgment motion of another Defendant, the United States of America, regarding Plaintiff's claim for malicious prosecution under the Federal Tort Claims Act ("FTCA"). Order (Dkt. 226) 19-20. Citing Ninth Circuit authority, the Court concluded that Prosecutor Luege's decision to prosecute was a discretionary function and thus the United States of America had not waived its sovereign immunity. *Id.*

Defendant briefly argues that this prior decision holding that the United States of America has not waived its sovereign immunity prevents this Court from now denying Defendant Escobar summary judgment on MAG's *Bivens* action for a Fourth Amendment violation. Given that Defendant has cited no authority for this proposition, the Court is not persuaded.

---

1198, 1205 (9th Cir. 1997) (affirming that plaintiff's *Bivens* action stated a claim under the Fourth Amendment and defendants were not entitled to immunity); *see also Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988) (holding that a finding of probable cause that is "tainted" by the defendants' actions does not preclude a claim against those defendants).

### iii.  Defendant Lacks Qualified Immunity Because MAG's Fourth Amendment Right Was Clearly Established

Even where a constitutional violation has occurred, a police officer is entitled to qualified immunity from suit under Section 1983 where an objectively reasonable officer would not have known that his conduct was unconstitutional under the circumstances of the case.  *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  The qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional right; and (2) if so, was the right at issue clearly established such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation.  *Brooks v. City of Seattle*, 599 F.3d 1018, 1022 (9th Cir. 2010).  As the Court has already resolved the first question in the affirmative, the Court turns its attention to the second question.

Ninth Circuit precedent confirms that MAG had a clearly-established Fourth amendment right to be free from an arrest where there was no probable cause for his arrest and a defendant's reckless disregard for the truth of the information he provided to the prosecutor proximately caused MAG's prosecution.  *See Beck v. City of Upland*, 527 F.3d 853, 861 (9th Cir. 2008) (reversing summary judgment in favor of defendant and rejecting defendants' argument that they were entitled to qualified immunity where a prosecutor authorized prosecution before the defendants obtained an arrest warrant); *see also Harris v. Roderick*, 126 F.3d 1189, 1198, 1205 (9th Cir. 1997) (affirming that plaintiff's *Bivens* action stated a claim under the Fourth Amendment and denial of qualified immunity was proper).  Furthermore, as previously discussed, the Ninth Circuit has recognized that summary judgment in favor of a defendant is improper where the defendant recklessly disregards the of truth information given to a prosecutor, the defendant's misrepresentation and omissions were material to the existence of probable cause, and probable cause would not have existed absent the defendant's actions.  *See Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991).

Thus, the Court concludes that Defendant is not entitled to qualified immunity.  Therefore, the Court DENIES Defendant's Motion for Summary Judgment with respect to the Fourth Amendment claim brought by MAG.

### c. The Other Plaintiffs' Do Not Show that Defendant—Rather than Other Officers—Violated Their Fourth Amendment Rights

Searches and seizures inside a home without a warrant are "presumptively unreasonable" under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371 (1980). This presumption is defeated where "voluntary consent has been obtained, either from the individual whose property is searched . . ., or from a third party who possesses common authority over the premises . . . ." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990) (citations omitted). A resident's consent to search is not voluntary given, however, where a defendant has threatened to take away the resident's children. *See United States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2004).

However, even if a Fourth Amendment violation has occurred, a defendant's liability for an unreasonable search in violation of the Fourth Amendment requires "individual participation, not simply being present or being a member of a team." *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002). Such individual participation may be established where a supervisor either: (1) engages in culpable action or inaction in the training, supervision, or control of subordinates; (2) acquiesces to subordinates' deprivation of the plaintiff's constitutional rights; or (3) engages in conduct that shows a reckless or callous indifference to the rights of others. *See Edgerly v. City & County of San Francisco*, 599 F.3d 946, 961 (9th Cir. 2010); *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (applying rule to *Bivens* action). Additionally, such individual participation can be shown by a defendant "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman*, 942 F.2d at 1447; *see also Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) ("The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions.").

The Other Plaintiffs' theory of liability arising from the warrantless search of the residence during MAG's arrest appears to be that the consent forms the Other Plaintiffs signed

were not obtained voluntarily.[14]  If, as the Other Plaintiffs allege, the search was conducted without a warrant and consent was obtained by threatening to take away residents' children, consent would not be voluntary and the search would indeed be a violation of the residents' Fourth Amendment rights.  *See United States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) (noting that an officer's threat to take away resident's children, if it had "remained unabated," would render resident's consent to the search as involuntary.).  However, Plaintiffs do not appear to have alleged that *Defendant*—as opposed to other ICE officers—planned, conducted, or was even physically present during the search of the residence.  Furthermore, Defendant stated in his deposition that it was his supervisor that discussed with the team a plan to obtain consent from the residents to search the home.  *See* Escobar Dep. 74-75.  Thus, while Plaintiffs may have a cause of action against the other officers who conducted the search, they lack a cause of action against Defendant.

In sum, because Defendant has shown that Plaintiffs have not established facts indicating that he individually participated in the search that violated their Fourth Amendment rights, the Court GRANTS Defendant's motion as to the Other Plaintiffs' claims.

## IV.   Disposition

For the reasons articulated above, the Court GRANTS Defendants' Motion for Summary Judgment with respect to all claims asserted against Defendant by the Other Plaintiffs who are not MAG.

///

///

///

///

---

[14] In their briefs, the Other Plaintiffs appeared to argue that their claims are based on Defendants' violation of *MAG*'s Fourth Amendment rights.  *See* Opp'n 17-18.  At oral argument, however, the Other Plaintiffs conceded that this was not their theory.  Thus, this Court does not address that argument.

The Court DENIES Defendants' Motion for Summary Judgment with respect to the Fourth Amendment claim asserted by MAG.

DATED:        November 14, 2011

_David O. Carter_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE